UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHARYL L. M., | ) |
| Plaintiff, | ) ) ) |
| | ) No. 24-cv-499 |
| v. | ) ) Magistrate Judge Keri L. Holleb Hotaling |
| FRANK BISIGNANO, Commissioner of the Social Security Administration, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Sharyl L. M.[1] appeals the decision of the Defendant Commissioner ("Commissioner") of the Social Security Administration ("SSA") denying her disability benefits. For the reasons set forth below, Plaintiff's motion for summary judgment (Dkt. 12)[2] is GRANTED, and the Commissioner's motion for summary judgment (Dkt. 13) is DENIED. The Commissioner's decision is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**I.      BACKGROUND**

**A.      Procedural History**

On February 2, 2016, Plaintiff filed an application for disability insurance benefits ("DIB") alleging disability beginning on March 15, 2013. (Administrative Record ("R.") 23, 252.) Ultimately, an Administrative Law Judge ("ALJ") held an Administrative Hearing and later issued a January 24, 2019 decision finding Plaintiff not disabled (R. 23-38), which Plaintiff appealed. The Court remanded the case to the Commissioner for further proceedings, holding that the ALJ

---

[1] In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initials of her last name.

[2] The Court construes Plaintiff's Memorandum in Support of Reversing or Remanding Commissioner's Decision Dkt. 12) as a motion for summary judgment.

had failed to build a logical bridge between the evidence and his conclusion that Plaintiff could sit no more than six hours and stand or walk for two hours in an eight-hour workday and could frequently handle and finger with her right hand. (R. 1137-48); *see* No. 20-cv-427, Dkt. 25 at 9-11 (N.D. Ill.). The Court explained that, although the ALJ acknowledged Plaintiff's previously broken coccyx and residual low back symptoms, he had overlooked Plaintiff's sciatica diagnosis and testimony that she could not sit for more than ten to fifteen minutes at a time, and that, in any event, none of that evidence explained how the ALJ found Plaintiff's sitting, standing, or walking tolerances. (R. 1146.) And, while the ALJ had detailed x-ray results of Plaintiff's right hand, which included mild arthritic changes, mild soft tissue swelling of the middle finger, no acute bony abnormalities, and sub-acute to chronic changes at the base of the first distal phalanx and mild osteoarthritic changes in the thumb, the ALJ did not connect those findings to his determination of the frequency with which Plaintiff could perform certain movements with that hand. (R. 1147.)

On consideration, the ALJ held another Administrative Hearing, and Plaintiff amended her disability onset date to February 21, 2023. (R. 1063, 1087.) The ALJ then again denied Plaintiff's application in an October 31, 2023 decision. That decision became final on or about January 2, 2024 (Dkt. 1 ¶ 8), rendering it reviewable by the district court under 42 U.S.C. § 405(g). Plaintiff filed this lawsuit challenging the ALJ's October 31, 2023 decision. (Dkt. 1.)

  **B.**  **The ALJ's Decision**

The ALJ analyzed Plaintiff's claim following the SSA's usual five-step sequential evaluation process to determine whether Plaintiff was disabled during the relevant time. (R. 16-31); *see also* 20 C.F.R. § 404.1520(a). The ALJ found at step one that Plaintiff met the insured status requirements of the Social Security Act for DIB through December 31, 2014 and did not engage in substantial gainful activity after her alleged amended disability onset of February 21, 2013. (R. 1065.) At step two, the ALJ identified severe impairments of degenerative disc disease,

hypothyroidism, dysfunction of major joints, asthma, and arthritis. (R. 1066.) The ALJ decided at step three that Plaintiff's impairments, alone or in combination, did not meet or medically equal one of the SSA's listings of impairments under 20 C.F.R. 404, Subpart P, Appendix 1. (*Id.*)

Before step four, the ALJ found Plaintiff retained the residual functional capacity ("RFC") "to perform light work" with the following limitations: "only occasionally lift and/or carry 20 pounds"; "frequently lift and/or carry ten pounds"; "sit for six hours in an eight-hour workday"; "stand/walk for two hours in an eight-hour workday"; frequently handle or finger with the right upper extremity; occasionally climb ramps or stairs and balance, stoop, kneel, crouch, or crawl; and never climb ladders, ropes, or scaffolds, or be exposed to dust, odors, gases, fumes, and pulmonary irritants. (R. 1066-67.) At step four, the ALJ concluded Plaintiff could perform her past relevant work. (R. 1072-73.) The ALJ therefore found Plaintiff was not disabled without reaching step five of the disability analysis. (R. 1073.)

## C.  Standard of Review

Judicial review of the ALJ's factual determinations is confined to ensuring those findings are supported by substantial evidence. *Martinez v. Kijakazi*, 71 F.4th 1076, 1079 (7th Cir. 2023) (citation omitted); *see also* 42 U.S.C. § 405(g). ALJs "are subject to only the most minimal of articulation requirements," *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024), but nevertheless "must provide a logical bridge between the evidence and the conclusions so that [the court] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." *Martinez*, 71 F.4th at 1080 (cleaned up).

## II.  ANALYSIS

The Court need only reach Plaintiff's first argument—that the ALJ again failed to provide a logical bridge for his findings regarding Plaintiff's sit, stand, and walk capabilities—because it is outcome-determinative.

3

The ALJ summarized Plaintiff's testimony, in which she indicated she could "sweep a little," could not sit for long periods without losing feeling in her toes because of her broken tailbone and often needed to readjust her position, could walk just 10-20 feet before needing a break to sit, lacks circulation in the right knee, and needs to elevate her legs every hour or so. (R. 1067.) The ALJ also recapped medical records from between Plaintiff's alleged onset date and date last insured ("DLI"), in which physical examinations were within normal limits, and Plaintiff had a normal gait. (R. 1069.) The ALJ then detailed medical records that post-dated Plaintiff's DLI, in which Plaintiff: underwent guided foam sclerotherapy of the right leg due to varicose veins on November 20, 2015; had x-rays of her knees and feet on February 22, 2016 that showed moderate osteoarthritic change and narrowing of the left first metatarsophalangeal joint without acute bony abnormality or marginal erosions and "at most a minimal degree or arthrosis of the right first metatarsophalangeal joint without any marginal erosions"; x-rays of her cervical and thoracic spine on June 8, 2016 that showed mild osteoarthritic changes in the cervical spine and mild to moderate osteoarthritic changes to the thoracic spine; x-rays of her right knee and left foot on June 27, 2018 that "revealed questionable small suprapatellar right knee joint effusion" with joint spaces maintained and no acute fracture or dislocation, and "mild degenerative changes of the first metatarsal phalangeal joint in the left foot with no acute fracture or dislocation and no radiopaque foreign bodies"; exhibited full lower extremity muscle strength on June 24, 2016; and more recently exhibited a "normal and steady" gait that, on April 19, 2023, was noted to be "adequate for exercise testing." (R. 1069-70.)

The ALJ finally observed that the State Agency medical consultants at both the initial and reconsideration levels determined there was insufficient evidence prior to the DLI to evaluate Plaintiff's claim. (R. 1072; *see also* R. 84, 93.) The ALJ assigned those opinions "little weight,"

4

finding the "minimal medical evidence in the record during the period at issue" was nevertheless "sufficient to establish that the claimant has a severe medically determinable impairment." (*Id.*)

In setting Plaintiff's RFC, the ALJ found that Plaintiff's testimony regarding her tolerances for walking (10-20 feet) and sitting (which causes numbness in her toes) were inconsistent with the medical records detailed above, which showed generally normal and steady gait and her "ability to perform activities of daily living," which included working part-time during the relevant period. (R. 1071-72.) The ALJ aimed to accommodate Plaintiff's knee and back pain by limiting her to light work and two hours of standing or walking in a day, along with other functional limitations. (R. 1072.) The ALJ concluded "the objective medical evidence and persuasive opinions above" supported his "residual functional capacity assessment." (*Id.*)

Plaintiff argues the ALJ's explanation fails to link his citations to medical record snippets, like a consistently normal and steady gait, to his determination that she could stand, walk, or sit for up to one quarter of a workday, because the normalcy or steadiness of her gait in a doctor's office does not have an obvious link to long she is able to sit, stand, or walk during a workday. (Dkt. 12 at 8-10.) The Commissioner, in support of the ALJ's conclusions, reiterates language the ALJ drew from the medical records, including Plaintiff's normal and steady gait and full leg strength and range of motion in examinations, along with additional examination findings the ALJ did not mention. (Dkt. 14 at 4.)

The Court agrees with Plaintiff—it is unclear how the ALJ crafted Plaintiff's RFC as to sitting, standing, and walking abilities during an eight-hour workday. Although a claimant generally bears the "burden to present medical evidence supporting her claim of disability," *Olsen v. Colvin*, 551 F. App'x 868, 875 (7th Cir. 2014), the ALJ bears the "responsibility to recognize the need for further medical evaluations of [the claimant's] medical conditions before making [the] [RFC] and disability determinations." *Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010); *see*

5

*also Josette S. v. Kijakazi*, No. 20-cv-4602, 2023 WL 2477536, at *7 (N.D. Ill. Mar. 13, 2023) (explaining that state agency consultants' conclusions they had insufficient evidence to evaluate Plaintiff's claimed disability "would generally trigger the ALJ's duty to seek additional evidence[,]" which might include "'recontact[ing] a claimant's medical sources, request[ing] additional existing evidence, ask[ing] the claimant to undergo a consultative examination at the Agency's expense, and/or ask[ing] the claimant or others for more information.'") (citations omitted). ALJs, after all, "must rely on expert opinions instead of determining the significance of particular medical findings themselves." *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018).

But, here, although the ALJ referenced "persuasive [medical] opinions" (R. 1072), there were none the ALJ found persuasive. In fact, "[n]o physician testified—no medical records [re]vealed—that [Plaintiff] has the residual functional capacity ascribed to [her] by the administrative law judge[.]" *Garcia v. Colvin*, 741 F.3d 758, 762 (7th Cir. 2013). The ALJ set Plaintiff's RFC for the limited period at issue in the absence of any opinion evidence to which he assigned any weight, without identifying medical records lending any direct support to his conclusions regarding how long Plaintiff could sit, stand, or walk. This constitutes reversible error. *See Suide*, 371 Fed. Appx. at 690 (where ALJ's rejection of medical opinions left an "evidentiary deficit," it was "unclear . . . how the ALJ concluded [plaintiff] could stand or walk for six hours a day."); *Josette S.*, 2023 WL 2477536, at *7 (finding "reversible error" where state agency consultants determined there was insufficient evidence to determine claimant's disability and, without gathering additional evidence, "the ALJ chose to rely on her own interpretation of the medical evidence to determine [c]laimant's RFC"); *Marianne T. v. Saul*, No. 19-cv-6171, 2021 WL 1088322, at *3-4 (N.D. Ill. Mar. 22, 2021) ("[H]ere, the evidence is inadequate, considering the dearth of opinion evidence and the unique 3-month relevant time period[,]" and ALJ did not refer to records supporting claimant's "*functional* capabilities") (emphasis added); *Barbarigos v.*

6

*Berryhill*, No. 17-cv-3234, 2019 WL 109373, at *12 (N.D. Ill. Jan. 4, 2019) ("Without any medical expertise or other opinion evidence, it is not clear how the ALJ determined that the findings he identified in his decision support his RFC assessment that Plaintiff can stand or walk for six hours as opposed to five hours or lift ten pounds frequently as opposed to occasionally.").

The Court accordingly remands this case again. The Court expresses no opinion on Plaintiff's remaining arguments or the decision to be made on remand except to reiterate that the ALJ must build a logical bridge between the evidence in the record and the ultimate conclusions, whatever they may be, on the issues pertinent to Plaintiff's disability determination.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment (Dkt. 12) is granted. The Commissioner's motion (Dkt. 13) is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

ENTERED: June 5, 2025

Hon. Keri L. Holleb Hotaling
United States Magistrate Judge